## MOSES WELLS *versus* SOMERSET & KENNEBEC RAILROAD COMPANY.

It is provided by § 5, c. 81, of R. S., of 1840, that in locating railroads, " no corporation shall take any meetinghouse, dwellinghouse or public or private burying ground, without the consent of the owners thereof," — *Held*, that the term dwellinghouse, as here used, means only the house, and includes no part of the garden, orchard or curtilage.

The right of eminent domain confers upon the Legislature authority to take private property, for public uses, when the public exigencies require it, subject only to that provision of our Constitution which exacts just compensation ; and a dwellinghouse is no more exempt than any other species of real estate, when the Legislature, in the exercise of that right, determines that the public exigencies require it.

EXCEPTIONS from the ruling of RICE, J.; *also, on* MOTION *of defendants to set aside the verdict.*

This was an ACTION OF THE CASE for entering the plaintiff's close and erecting thereon a bridge. The various questions of law, upon which the Judge at *Nisi Prius* gave instructions to the jury, were argued by ·

*Bradbury, Morrill & Meserve,* for the defendants, and by

*J. Baker*, for the plaintiff.

It was contended by the counsel for the plaintiff, that the instruction that the defendants could not so locate upon the plaintiff's land connected with his dwellinghouse as necessarily to deprive him of the reasonable use thereof as a dwellinghouse, was correct. It was a necessary part of the dwellinghouse. R. S., of 1840, c. 81, § 5, also c. 51, § 1. Instructions more favorable would render the statute provision nugatory. The word is used either in its proper or technical sense, and either will carry with it the land necessary to its use. Bouvier's Law Dic., " *House;* " R. S., c. 1, § 4; 13 Met. 109; 2 Greenleaf's Cruise, 642; 27 Maine, 357, 360; 3 Mason, 280 and 284; 1 Sumner, 500.

From the view taken by the Court of this instruction, further reference to the other questions of law, the evidence reported and the arguments of counsel relating thereto, becomes unnecessary.

The opinion of the Court was drawn up by

CUTTING, J. — The defendants, on the trial, contended *that* the premises in controversy, at the time their road was located, ·were owned by one Frederick Wingate, to whom they have paid the land damages; *that* the whole width of their road was located North of the Northerly line of the plaintiff's land; consequently the dividing line of the two lots became a question of fact, and much evidence, touching that point, was submitted to the jury. The case finds that several deeds, plans and locations used at the trial are submitted, but none have been furnished, and, from the view taken, they become unnecessary.

It was claimed by the plaintiff that a portion of the road was located on his lot, and so near to his dwellinghouse as seriously to incommode him in its occupancy. Upon this point the Judge instructed the jury, " *that* the defendants could not take the plaintiff's dwellinghouse, nor so locate upon his land connected therewith, as necessarily to deprive him of the reasonable use thereof as a dwellinghouse, and, whether they

had so done, was a question for them to determine." This ruling raises a question as to the construction of R. S. of 1840, c. 81, § 5, under which the location was made, and which provides that "no corporation shall take, as aforesaid, any meetinghouse, dwellinghouse, or public or private burying ground, without the consent of the owners." The correctness of that part of the instruction which related to the dwellinghouse is not controverted, but only the subsequent part which refers to the inconvenient proximity of the road to the house.

It is contended, by the plaintiff's counsel, that the word "house" is used either in its popular or technical sense, and will carry with it the land necessary for its use; and, to this point, is cited *Bouvier's* definition, sustained by numerous authorities, that "in a grant or demise of a house, the curtilage and garden will pass," and hence, it is argued, that whatever passes under the term house is not within the defendants' control by force of their charter or any law of the State. And, further to sustain this view, R. S., c. 1, § 4, is referred to, which provides that "words and phrases are to be construed according to the common meaning of the language. Technical words and phrases, and such as have a peculiar meaning, are to be construed as conveying such technical or peculiar meaning."

If the word dwellinghouse have a technical meaning, it has also a common meaning,—such as, "a building inhabited by man." *Bouvier.* "The house in which one lives." *Webster.* We think the Legislature, in the enactment of our statutes, must have understood the term dwellinghouse as having a common and not a peculiar or technical meaning; otherwise burglary may be committed by a felonious breaking and entry in the night time into a garden or curtilage, or a civil process may be served, by leaving a copy in the debtor's garden or door yard, as his last and usual place of abode. Indeed, the plaintiff cannot contend for a technical construction without impeaching the ruling which he attempts to uphold. His doctrine would prohibit the defendants from locating upon the curtilage, the garden, and, according to *Bacon's* definition, the

orchard of the plaintiff, a doctrine which might exclude any
railroad track from entering or passing through cities, vil-
lages or any densely populated place.   Such has never been
the cotemporaneous construction of, or practice under, the
Act.

The right of eminent domain is an attribute of sovereignty,
and confers upon the Legislature authority to take private
property for public uses, when the public exigencies require
it, subject only to that provision in our constitution which ex-
acts just compensation.   By this fundamental law a dwelling-
house is no more exempt than any other species of real estate,
when the Legislature shall resolve that the public exigencies
require it.   Hence the statute authorizing " the pulling down
or demolishing any building to prevent the spread of fires,"
&c.   Hence, " any railroad corporation may take and hold so
much real estate as may be necessary for the location, con-
struction and convenient use of said road," without the con-
sent of the owner, except a meetinghouse, dwellinghouse, or
public or private burying ground.   And, we have seen that
the term dwellinghouse, as used in the statute, means only
the house, and includes no part of the garden, orchard or cur-
tilage.   But the ruling excepted to not only excludes the
house, but also so much of the adjoining land as is necessary
for its reasonable use ; whereas the statute makes no such ex-
emption.   Our neighbor's landmarks may be as readily re-
moved by an erroneous construction of a statute as by physical
force, and, should the law be settled in conformity with the in-
struction, every railroad corporation would be left to the mer-
cy of the owners of dwellinghouses situated in the vicinity of
the locations ; for, if the company have taken land without con-
sent, necessary for the reasonable use of the house, it has ex-
ceeded its authority, as much so as though it had taken the
house itself, and its daily use is a daily trespass, subjecting the
corporation even to an indictment for erecting and continuing
a nuisance.   Every individual whose land has thus been taken
might institute suits, and raise issues of fact for the jury, as to
whether too great encroachments had been made upon their

dwellings. The right of eminent domain, thus exercised, would become a farce, and a railroad, to be permanent, should be located in a wilderness. And, hence, we perceive the wisdom of the Legislature in making no such exemptions—creating no such uncertainties, and laying no such foundation for endless litigation; while, on the other hand, ample provision is made to obtain indemnity for such encroachments, and it has been the uniform practice, if we mistake not, of the County Commissioners, having jurisdiction over the subject matter, to assess damages proportionate to the injury sustained. *Vide Dodge* v. *County Commissioners of Essex*, 3 Met., 382.

·*Exceptions sustained,* —

*Verdict set aside, and*

*New trial granted.*

TENNEY, C. J., and RICE, APPLETON, MAY, and GOODENOW, JJ., concurred.